## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FIRST AMERICAN TITLE INS. CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 07-00544 |
| | ) | |
| | ) | |
| JP MORGAN CHASE & CO. and IDEAL | ) | |
| SETTLEMENT SERVICES INC. LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

### MEMORANDUM OPINION

Before this Court are two motions for consideration: (1) Motion for Reconsideration of that Part of June 12, 2007 Order Which Awarded Attorneys' Fees to First American [DE 23] ("Motion for Reconsideration"), filed by Defendant JP Morgan Chase & Co. on June 25, 2007; and (2) a Second Motion for Attorneys' Fees [DE 25] ("Second Motion for Attorneys' Fees"), filed by Plaintiff First American Title Insurance Corporation on June 19, 2007. For the reasons set forth below, JP Morgan's Motion for Reconsideration is denied and Plaintiff's Second Motion for Attorney's Fees is granted.

### I. INTRODUCTION

This case is essentially about a piece of property located in Washington County, Pennsylvania. First American brought an action for declaratory judgment against JP Morgan and Ideal Settlement Services ("Ideal"), seeking a declaration of the parties' rights and obligations under the parties' respective roles in the purchase of the Washington County

1

property. Docket No. 1, Exh. A.  The property, located at 99 Alexander Drive, McMurray, Pennsylvania 15317, was acquired by Christopher Fekos (not a party to this action), by General Warranty Deed dated May 25, 2001. *Id.* at ¶¶ 7,8. The deed was recorded with the Recorder of Deeds in Washington County on June 26, 2001. *Id.* at ¶8.  Fekos allegedly financed the purchase of the property with a loan from Countrywide Loans, secured by a mortgage. *Id.* at ¶9. Thereafter, Fekos secured a home equity loan, secured by a mortgage, also through Countrywide. *Id.* at ¶8. In July 2002, Fekos refinanced the Countrywide mortgages by a loan, secured through a first mortgage, through Allied Mortgage Group in the amount of $868,500. *Id.* at ¶10.

Plaintiff claims that Ideal, acting as the title agent of Plaintiff, allegedly failed to promptly record the mortgage as a first lien on the property in the Washington County Recorder's Office. *Id.* at ¶¶11, 12.  Again, acting as title agent for Plaintiff, Ideal issued a loan title policy to Allied Loan insuring the property up to the amount of the Allied loan. *Id.* at ¶13. On August 12, 2002, Fekos secured an additional loan secured by a mortgage on the property through Centex Home Equity Company in the amount of $600,000. *Id.* at ¶14.  The Centex mortgage was recorded on August 21, 2002 in the Washington County Recorder's Office. *Id.* at ¶15.  On December 6, 2002, Fekos secured yet another loan, secured by a mortgage on the Washington County property from Bank Pittsburgh in the amount of $400,000. *Id.* at ¶17.  The Bank Pittsburgh mortgage was recorded in the Washington County Recorder's Office on December 10, 2002. *Id.*  Ideal subsequently recorded the Allied mortgage on March 4, 2003. *Id.* at ¶19.

2

On December 26, 2003, the Allied mortgage was assigned to Bank One[1], which was recorded in the Washington County Recorder's office on March 10, 2004. *Id.* at ¶20. In May, 2004, Bank Pittsburgh brought a mortgage foreclosure action against Fekos in the Court of Common Pleas of Washington County. *Id.* at ¶22. A judgment was entered against Fekos in the foreclosure action. *Id.* at ¶23. On June 29, 2006, JP Morgan sent a letter to Plaintiff requesting that Plaintiff remove the adverse claim affecting title to the Fekos property. *Id.* at ¶31. Plaintiff claims that JP Morgan received timely notice of the foreclosure action, but failed to forward that information to Plaintiff, whereby it allowed JP Morgan to be divested of its lien on the property. *Id.* at ¶35.

Accordingly, Plaintiff brought an action for declaratory judgment in Washington County against both JP Morgan and Ideal on March 21, 2007. Docket No. 1, Exh. A. In Count I of the Complaint, Plaintiff asks for an Order declaring that Plaintiff is not obligated to indemnify and/or provide coverage to JP Morgan pursuant to JP Morgan's June 29, 2006 claim submitted to Plaintiff requesting the removal of the "adverse claim" against the Fekos property. *Id.* Plaintiff contends that JP Morgan had notice of the mortgage foreclosure action pending on the Fekos property, but failed to give Plaintiff notice, as required by the title policy held by JP Morgan. *Id.* at ¶40. In Count II of its Complaint, Plaintiff asks for an Order declaring that Ideal is obligated to indemnify Plaintiff for any and all losses sustained by Plaintiff, under the conditions of the Agency Agreement, insofar as Ideal failed to properly notify Plaintiff of the potential adverse claim (prior liens) against the Fekos property. *Id.* at ¶52.

On April 24, 2007, JP Morgan filed a Notice of Removal from the Court of Common Pleas of Washington County to this Court. Subsequent to filing its Notice of Removal, on April

---

[1]   Bank One merged with JP Morgan Chase in July, 2004. For purposes of this Memorandum Opinion, Bank One will hereinafter be referred to as JP Morgan.

3

25, 2007, JP Morgan filed a Motion to Sever Plaintiff's Claims Against Ideal Settlement Services, LLC for Fraudulent Joinder. On May 18, 2007, Plaintiff First American filed a Motion to Remand and Motion for Attorneys' Fees. On June 12, 2007, pursuant to 28 U.S.C. §1447, this Court granted Plaintiff's Motion to Remand and Motion for Attorneys' Fees. On June 18, 2007, the Court sent a remand letter and Order of this Court remanding the instant case to the Washington County Court of Common Pleas Clerk of Court.

On June 25, 2007, JP Morgan filed the instant Motion for Reconsideration with respect to that part of the June 12, 2007 Order awarding attorneys' fees. On July 10, 2007, the Plaintiff filed a Response to JP Morgan's Motion for Reconsideration and, thereafter on July 19, 2007, filed a Second Motion for Attorneys' Fees. On July 30, 2007, JP Morgan filed a Reply to Plaintiff's Second Motion for Attorneys' Fees. On July 31, 2007, the Court heard oral argument as to both motions. On August 14, 2007, the Court ordered the Plaintiff to submit a more detailed accounting of fees and costs expended as a result of remand issues, only. On August 29, 2007, after a short extension granted by the Court, the Plaintiff filed its Response to said Order of Court.

## II. JP MORGAN'S MOTION FOR RECONSIDERATION

JP Morgan has filed a Motion for Reconsideration as to that part of the June 12, 2007 Order awarding attorneys' fees to First American in conjunction with remand of this case to the Court of Common Pleas of Washington County. In order to address this issue, this Court will (1) provide background information as to declaratory judgment actions under Pennsylvania law; (2) discuss its decision to remand this case to the Court of Common Pleas of Washington County, wherein it will also address JP Morgan's arguments regarding the appropriateness of removal; (3) discuss this Court's decision to award attorneys' fees to the Plaintiff on remand; (4) address

4

JP Morgan's instant Motion to Reconsider those fees, concluding that there was no manifest error of law in awarding Plaintiff attorneys' fees; and finally (5) address Plaintiff's instant Second Motion for Attorneys' Fees, concluding, once again, that fees are appropriate here.

## A.    PLAINTIFF'S DECLARATORY JUDGMENT ACTION

The Pennsylvania Declaratory Judgment Act, 42 Pa. C.S.A. § 7533 provides:

> "Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a final judgment or decree."

42 Pa. C.S.A. § 7533. Under the Act, construction of a contract can occur before or after there is an actual breach. *Id.* at §7534. A party to a contract, whose rights or legal status are affected by the contract, may "obtain a declaration of rights, status, or other legal relations thereunder." *Id.* at §7533.

Pennsylvania courts have allowed joinder of parties in declaratory judgment actions, where the claims against both parties arise out of the same occurrence in order to avoid an unsatisfactory or inconsistent resolution of the two suits. *Insurance Co. of North America v. Alberstadt,* 119 A.2d 83 (Pa. 1956). Moreover,

> "it has been said that it apparently was the purpose, even in a declaratory judgment proceeding, to enable all parties interested in a controversy to be brought into the case with the object of settling it in all its varied ramifications, and that the trend of the cases dealing with declaratory judgment acts is to extend their benefit to parties whose interests are challenged or in jeopardy even before a right of action exists or cause of action accrues."

142 A.L.R. 8 (citations omitted) (referring to the Uniform Declaratory Judgment Act, 28 U.S.C.A. §2201).

Here, Plaintiff brought a declaratory judgment action against two parties, JP Morgan and Ideal. Plaintiff's respective claims against JP Morgan and Ideal arose from the same set of facts, namely the purchase of the Washington County property and subsequent foreclosure action against that property. In particular, Plaintiff alleges inaction on the part of both Defendants based on their failure to provide Plaintiff notice of the adverse claim (in the form of liens) against the Fekos property and notice of the subsequent foreclosure. Under the Pennsylvania Declaratory Judgment Act, Plaintiff can bring such an action in order to have a court declare the rights and obligations of the parties with respect to any potential liabilities stemming from default on the Allied loan, subsequent to foreclosure on the Fekos property. As noted above, a proper party to a declaratory judgment action is any party whose interests are challenged, even before a cause of action accrues. Here, Plaintiff named the two parties who allegedly challenged or jeopardized Plaintiff's interests; the Plaintiff was (and is) within its rights to do so, even before the commencement of any potential action against Plaintiff.

Furthermore, this Court gives deference to Plaintiff's choice of forum. Plaintiff brought this action in state court, which is more likely to have familiarity with the issues at hand than this Court in that foreclosure actions are common to state courts. In selecting the state court as a forum, Plaintiff was well within its right to do so.

The Plaintiff argues that it brought this action against both JP Morgan and Ideal in the interest of judicial economy and to avoid the risk of duplicative litigation and the further risk of inconsistent results. Docket No. 14, at 5, 6. While the substantive merits of these claims are not at issue here, what is at issue is whether JP Morgan properly removed this case to federal court and whether this Court's award of attorneys' fees to the Plaintiff on Remand was an error of law.

**B.    THIS COURT'S REMAND OF THIS CASE TO THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY**

Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." 28 U.S.C. §§ 1332, 1447; *Steel Valley Auth. v. Union Switch and Signal Div.,* 809 F.2d 1006, 1010 (3d Cir. 1987) (citations omitted).   There is generally a presumption against removal, in order to give deference to Plaintiff's choice of forum. *Mcmanus v. Glassman's Wynnefield, Inc.,* 710 F.Supp. 1043 (E.D. Pa. 1989) (noting "the congressional purpose of giving deference to a plaintiff's choice of a state forum and of resolving doubts against removal and in favor of remand"). This case arises out of the purchase of a piece of property in Washington County and Plaintiff properly chose to bring this action in that county in state court.

Here, in determining whether removal was proper, this Court carefully reviewed the allegations of Plaintiff's Complaint as well as JP Morgan's Notice of Removal and its Motion to Sever.   In its Motion to Sever filed in conjunction with its Notice of Removal, JP Morgan suggests that, not only is removal proper but that the Plaintiff only included Ideal as a Defendant in order to keep JP Morgan out of federal court and in state court, where JP Morgan contends it will be "bogged down."[2]

28 U.S.C. §1441 provides:

---

2    To that end, this Court refutes JP Morgan's contention that it will somehow be "bogged down" in state court. This Court notes that this case is now before the Honorable Mark Mascara in the Court of Common Pleas of Washington County, and further notes Judge Mascara's reputation for efficiency and expeditiously resolving cases brought before him.  This Court also notes that parties have the option to have their case expedited in Washington County, by filing the appropriate motions with that Court. This Court also disagrees with JP Morgan's argument (albeit in an affidavit filed with the Court) that state court is somehow not an appropriate venue for insurance coverage cases. *See* Docket No. 27, Exh. A, at ¶10 ("It was the opinion of JP Morgan's counsel that Federal Courts were more apt to have experience in such matters thus more familiarity with the issues to be raise by anticipated motions.")  To that end, this Court also points out Judge Mascara's twenty years of experience, a substantial part of which consisted of insurance coverage cases.

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

*Id.* Because there is no federal question in this case, this Court does not have original jurisdiction over this action. Therefore, this action is removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought", i.e., the Commonwealth of Pennsylvania. *Id.* Here, Ideal is included as a defendant in this action and, on the plain face of the Complaint, is a limited liability company with offices located in the state of Pennsylvania. *See* Docket No. 1, Exh. A, at ¶5.

The citizenship of a limited liability company is that of the persons composing the association. *Kalian at Poconos, LLC v. Saw Creek Estates Community Ass'n.,* 275 F.Supp.2d 578, 586 (M.D. Pa. 2003). On the face of the Complaint, Ideal appears to be a Pennsylvania LLC. Docket No. 1, Exh. A at ¶5.3 For purposes of determining diversity, this Court simply looked at the Complaint and the Notice of Removal, and found that diversity jurisdiction was lacking under §1441(b).

In order to overcome the bar to removal created by §1441(b), JP Morgan had to show that Ideal was not a properly named defendant in this action. Accordingly, JP Morgan repeatedly argues that Ideal is not a proper defendant to this action under two theories: (1) that Ideal was fraudulently joined and therefore, should be severed as a defendant; and, in the alternative, (2) that this Court should have realigned the parties according to their (alleged)

---

3       Before removing this case to federal court, JP Morgan apparently chose not to do any research, investigation, or discovery in order to determine whether or not Ideal is, in fact, a Pennsylvania resident based on the residency of its members.

proper interests, such that Ideal would become a plaintiff, leaving JP Morgan as the sole defendant. However, as discussed below, JP Morgan failed to meet its burden in persuading this Court as to either argument and, therefore, JP Morgan did not overcome the §1441(b) bar to removal.[4]

### 1.    JP MORGAN'S FRAUDULENT JOINDER ARGUMENT

In its Notice of Removal, JP Morgan argued that the Plaintiff fraudulently joined Ideal as a defendant for the sole purpose of destroying diversity, characterizing Plaintiff's inclusion of Ideal as "an egregious example of fraudulent joinder" and an attempt to "forum shop." *See* Docket No. 1, at ¶8; Docket No. 2, at 2. In support of this contention, JP Morgan cites Rules 19 and 21 of the Federal Rules of Civil Procedure. Docket No. 3, at 5. While JP Morgan is correct in that Rule 21 permits a court to dismiss dispensable parties (as defined by Rule 19), *see* Fed.R.Civ.P. 19 and 21, neither Rule 19 nor Rule 21 address the standard for fraudulent joinder of defendants or the standard under which a defendant to an action should be severed.

The Third Circuit has not analyzed fraudulent joinder of parties under Rule 19 or Rule 21. The Third Circuit has held that, in order to show that a plaintiff fraudulently joined a defendant, the defendant claiming fraudulent joinder has a heavy burden of persuasion. *Boyer v. Snap-On Tools Corp.,* 913 F.2d 108, 111 (3d Cir. 1990) ("Because a party who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists, a removing party who charges that a plaintiff has fraudulently joined a party to destroy diversity of jurisdiction has a heavy burden of persuasion") (citing *Steel Valley Auth. v. Union Switch and Signal Div.,* 809

---

4    Furthermore, it is the Court's belief that remand was appropriate in that simply put, this matter involves real property in Washington County, which property and its related financial transactions resulted in a properly brought declaratory judgment action in the Court of Common Pleas. Furthermore, under §1441(b), Ideal is, on the face of the Complaint, a citizen of the Commonwealth of Pennsylvania, wherein this action was brought. Therefore, due to the presence of a non-diverse defendant, removal of this action was statutorily barred. JP Morgan did not overcome its burden in order to show otherwise and this Court, therefore, remanded this case to the Court of Common Pleas.

F.2d 1006, 1010 (3d Cir. 1987) (citations omitted)).  Joinder will be deemed fraudulent only where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant. *Id.* at 112; *Batoff v. State Farm Ins. Co.,* 977 F.2d 848 (3d Cir. 1992).

The Third Circuit has clearly held that, where a plaintiff has a colorable claim against a non-diverse defendant, that defendant cannot be held to have been properly joined for purposes of destroying diversity. *Boyer,* 913 F.2d at 111; *Batoff,* 977 F.2d at 848. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Boyer,* 913 F.2d at 111 (citing *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440-41 (11th Cir. 1983) (quotations omitted)).  Furthermore, "the joinder may be fraudulent if the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state." *Boyer,* 913 F.2d at 111, 112 (quotations omitted).

In this case, Plaintiff has brought a single action for declaratory judgment against both JP Morgan and Ideal, seeking a declaration of the parties' rights and liabilities stemming from a single set of circumstances resulting from a foreclosure action.  According to Plaintiff's Complaint, JP Morgan's failure to give Plaintiff timely notice of the adverse claim against the Fekos property terminates JP Morgan's rights under the title policy issued by Plaintiff.  Docket No. 1, Exh. A., at ¶¶ 39, 40.  Plaintiff further claims that Ideal failed to provide Plaintiff timely notice of the existence of a potential claim on the title policy (prior to divestiture of JP Morgan's mortgage) issued by Plaintiff.  Docket No. 1, Exh. A, at ¶¶ 50, 51.  In its Complaint, Plaintiff alleges that both JP Morgan and Ideal failed to give notice of the potential adverse action against the Fekos property.  More specifically, JP Morgan failed to give notice of the actual foreclosure

in a timely fashion as allegedly required by the title policy, *Id.* at ¶¶ 39, 40, and Ideal failed to give notice of the divestiture of JP Morgan's mortgage as required under the Agency Agreement. *Id.* at ¶¶ 50, 51.

JP Morgan further argued that "because First American's contract claim against its own agent, Ideal, is wholly separate from its claim for declaratory relief against JP Morgan Chase arising out of their insurance contract, and because any right of indemnification which First American may have is fully compensable in a separate action, the claims should be severed ..." Docket No. 3, at 6. However, under the Pennsylvania Declaratory Judgment Act, persons whose rights are affected by a contract may obtain a declaration of their legal rights thereunder. 42 Pa. C.S.A. § 7533. Furthermore,

> declaratory judgment actions are the most common procedural means by which parties to an insurance coverage dispute seek judicial resolution. Such an action seeks a determination (a "declaration") from a court as to the rights and obligations of the parties to an insurance contract; it may be initiated by either party...

*Norton on Insurance Coverage, 2d Ed.,* §2.B. Furthermore, regardless of whether Plaintiff's claims against JP Morgan and Ideal arise from the same contract, once again, the standard set forth for fraudulent joinder by the Third Circuit requires only that Plaintiff have a colorable claim against the non-diverse defendant, Ideal, and that the state court could possibly find a cause of action against Ideal. Under Pennsylvania law, Plaintiff properly requested declaratory relief against both JP Morgan and Ideal. Pa. C.S.A. §7533. Furthermore, in determining whether joinder was fraudulent, this Court is not to look at the merits of Plaintiff's claims against the parties. *Boyer,* 913 F.2d at 113 (noting the presence of "identical legal and factual issues" applicable to all defendants and holding "that where there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the

non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses").

Finally, in further support of its argument to sever, JP relies on *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92 (1921), which sets forth the requirements for showing fraudulent joinder of a non-diverse defendant in order to overcome a bar to removal. Specifically, JP Morgan quotes *Wilson* for the following proposition:

> If in such a case a resident defendant is joined, the joinder, although fair upon its face, may be shown by a petition for removal to be only a sham or fraudulent device to prevent removal; but the *showing must consist of a statement of facts rightly leading to that conclusion apart from the pleaders' deduction.*

Docket No. 3, at 2 (quoting *Wilson*, 257 U.S. at 92) (emphasis added). While JP Morgan accurately quotes *Wilson*, JP Morgan subsequently ignores *Wilson's* requirement that a defendant must set forth facts that would lead to the conclusion that fraudulent joinder had occurred. On the contrary, JP Morgan offers no facts, but only bald conclusions, such as, "egregious example of fraudulent joinder", Docket No. 3, at 2, "gamesmanship", *id*, and "forum shop", *id.* Without an underlying factual basis, such hyperbolic statements fail.

After considering JP Morgan's argument for severing Ideal, the Court concluded that JP Morgan clearly did not meet its burden of showing fraudulent joinder. Therefore, JP Morgan did not meet its burden in overcoming the jurisdictional bar set by §1441(b) and this Court did not find a colorable or objectively reasonable reason for removal, based on JP Morgan's assertions that Ideal was joined solely for the purpose of destroying diversity.

## 2.   JP MORGAN'S REALIGNMENT ARGUMENT

JP Morgan also argues that this Court should have realigned the parties "to reflect that Ideal is properly situated as a Plaintiff." Docket No. 3 at 10. Realignment of parties for

purposes of determining diversity jurisdiction is appropriate where there is no real dispute by opposing parties over a primary issue in controversy. *Employer's Ins. Of Wausau v. Crown Cork & Seal Co., Inc.,* 942 F.2d 862 (3d Cir. 1991).

"The pleadings are always a key source to which courts look when identifying the primary issue for jurisdictional purposes." *Id.* at 866 (quoting *Smith v. Sperling,* 354 U.S. 91, 77 (1957) ("[T]he proper course is ... to determine the issue of antagonism on the face of the pleadings and by the nature of the controversy ... This is a practical ...determination and is resolved by the pleadings and the nature of the dispute")); s*ee also Independent Pier Co. v. Lloyd's London,* No. 88-3467, 1988 WL 92171, at *3 (E.D. Pa. Sept. 1, 1988), citing *Smith,* 354 U.S. at 91, 96 ("Thus, if the pleadings set forth an actual and substantial controversy between [Plaintiff] and [Defendant], realignment is inappropriate and jurisdiction is lacking")).

JP Morgan argues that the parties in this action should have been realigned according to the primary issue in the case, which, according to JP Morgan, is Plaintiff's liability to JP Morgan under the Title Policy. However, the primary issue is determined based on the pleadings and the nature of the cause of action. *Smith* 354 U.S. at *77. Pursuant to the Pennsylvania Declaratory Judgment Act, Plaintiff brought a cause of action arising from a foreclosure action, namely the alleged failure of both Defendants to provide Plaintiff with timely notice of the circumstances of said foreclosure action and the adverse claim against the Fekos property. The primary issue is JP Morgan's and Ideal's obligations to Plaintiff under the Defendants' respective agreements with Plaintiff.

JP Morgan suggests that, had this Court aligned the parties such that JP Morgan was the Plaintiff and First American Title was the Defendant, Ideal would be properly situated as a third party defendant. Docket No. 23 at 4. JP Morgan argues that "[i]n that case, it is clear that there

would be diversity and JP Morgan Chase **could have instituted that as an original action in federal court.**" *Id.* (emphasis in original). First, JP Morgan's alternative theory of this case fails to acknowledge the nature of the action as set forth in Plaintiff's Complaint, i.e., declaratory judgment. Secondly, when there is an actual controversy between Plaintiff and the named defendants over the issue of Plaintiff's rights and Defendants' obligation under their respective agreements, it is not proper for the Court to realign the parties. *Employers Ins. Of Wausau,* 942 F.2d at 865. Third and finally, while it may be true that JP Morgan *could* have brought an action against Plaintiff in federal court for breach of contract, it is not for this Court to look outside of Plaintiff's Complaint and see a completely separate cause of action that *could* have been brought by JP Morgan against Plaintiff.[5]

In its decision to remand, this Court did not see it appropriate to realign the parties because the Court found a state law based controversy between Plaintiff and the named Defendants.

### 3. THIS COURT'S DECISION TO REMAND AND AWARD ATTORNEYS' FEES

Because this Court found no reasonable basis for removal, it remanded this case to the Court of Common Pleas of Washington County. Furthermore, pursuant to 28 U.S.C. §1447, this Court determined that Plaintiff should be awarded attorneys' fees incurred as a result of the remand.

### C. ANALYSIS OF THE INSTANT MOTION FOR RECONSIDERATION

As a threshold matter, while JP Morgan seeks reconsideration of this Court's order awarding attorneys' fees, JP Morgan failed to raise any objection to Plaintiff's request for

---

5    In support of realignment, JP Morgan relied upon *Greenpoint Mortgage Funding, Inc. v. Conestoga,* Civ.A.No. 07-534/548 (E.D. Pa June 8, 2007) (Order). However, the Order cited by Defendant JP Morgan involved that Court's decision to strike a third party complaint and contains no case law or facts applicable to the instant case. *Id.*

attorneys' fees prior to this motion. *See* Docket No. 18. The Third Circuit has held that, where a party fails to raise an objection prior to the party's motion for reconsideration, said party has waived the right to raise the objection in a motion for reconsideration. *See Confer v. Custom Engineering Co.,* 952 F.2d 41 (3d Cir. 1991). While this Court declines to hold that JP Morgan waived its right to raise an objection to attorneys' fees here because it  failed to raise the objection until the present motion, JP Morgan has nonetheless not met the standard for granting reconsideration of the award and its motion is, therefore, denied.

In support of its Motion for Reconsideration, JP Morgan argues that because it had a "good faith basis in which to seek removal," attorneys' fees should not have been awarded on remand. Docket No. 23, at 3. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985) (citation omitted). "Because of the interest in finality, at least at the district court level, motions for reconsideration should be granted sparingly; the parties are not free to relitigate issues the court has already decided." *Williams v. City of Pittsburgh*, 32 F.Supp. 2d 236 (W.D. Pa. 1996).

In its brief, JP Morgan misstates the standard with respect to awarding attorneys' fees in connection with removal. First, the Third Circuit has not held that "as long as there is a good faith basis for the removing party to have sought to invoke federal jurisdiction, attorneys' fees should not be awarded," as asserted by JP Morgan. *See* Docket No. 23, at 3. To the contrary, in *Mints v. Educational Testing Service*, 99 F.3d 1253 (3d Cir. 1996), the Third Circuit held that "...the district court may require the payment of fees and costs by a party which removed, even though the party removing the case did not act in bad faith." *Id.* at 1260. Furthermore, in *Kleiss v. Granite Run Mall*, No. Civ. A. 06-374, 2006 WL 562203, slip op. at *1 (E.D. Pa. Mar. 6,

2006), the Court did not hold that attorneys' fees should not be awarded where defendants had a good faith basis for removal, again as asserted by JP Morgan. *See* Docket No. 23, at 3. Rather, the Court held that "[w]hile a showing of bad faith is not a prerequisite to awarding attorneys' fees when remanding an action, there is no presumption of a fee award that arises by virtue of a remand order." *Kleiss*, 2006 WL 562203, slip op. at *4.

JP Morgan argues that courts, particularly in this Circuit, are reluctant to award attorneys' fees on remand, which is simply not the case.[6] In *Martin v. Franklin Capital Corp.,* 546 U.S. 132 (2005), the Supreme Court held that there is neither a presumption in favor of nor against an award of attorneys' fees. *Id.* at 138-39 ("But just as there is no basis for supposing Congress meant to tilt the exercise of discretion in *favor* of fee awards under § 1447(c) . . . so too there is no basis here for a strong bias against fee awards. . . . The statutory language and context strike[s] us as more evenly balanced between a pro-award and anti-award position . . . we see nothing to persuade us that fees under §1447(c) should either usually be granted or usually be denied").

Pursuant to 28 U.S.C. §1447, a district court may require payment of fees and costs by a party who removed a case to federal court and which was then remanded. 28 U.S.C. §1447(c);

---

6    Turning to JP Morgan's contention that this Court has acted inconsistently with other Courts in this Circuit (insofar as other Courts have declined to award attorneys' fees on remand in some circumstances), the case law relied upon by JP Morgan in support of said contention is distinguishable from the instant case. *See Kleiss,* 2006 WL 562203, at *1 (where the Court found attorneys' fees inappropriate on remand where the removal issue involved an amount in controversy, which was questionable based on certain filings made by the plaintiff); *DeAngelo Brothers, Inc. v. Long,* No. 4:05-CV-0800, 2005 WL 1309037, at*1 (M.D. Pa. Jun.1, 2005) (where the issue was the amount in controversy and there was an issue as to whether certain damages could be aggregated); *Sills v. Public Service Electric & Gas, Inc.*, Civil Action No. 06-4567 (DMC), 2007 WL 1035027, at *5 (D.N.J. Apr. 3, 2007) (where the defendant argued that removal was proper because the plaintiff's state law claims were inextricably intertwined with federal law, and the Court found otherwise). Clearly, because a Court acts within its discretion in awarding attorneys' fees, that decision is to be based on the circumstances surrounding removal and remand. *Mints,* F.3d at 1260.
    Finally, the Court notes the following cases, assuredly among others, in which courts in this Circuit *have* awarded attorneys' fees. *See* e.g. *Portside Investors, L.P. v. Northern Ins. Co. Of New York,* 253 F.Supp.2d 835 (E.D. Pa. 2003); *Step Plan Services, Inc. v. Koresko,* 219 Fed. Appx. 249, 250 (3d Cir. 2007); *Yorker v. Manapalan Police Dept.,* No. Civ. A. 04-5170 (D.N.J. Jun. 17, 2005); *Connors v. Malik,* No. Civ. A. 97-666 (W.D. Pa. Nov. 3, 1997).

*Martin*, 546 U.S. at 138; *Mints*, 99 F.3d at 1259. While §1447 does not mandate attorneys' fees on remand, such a decision to award fees lies within the district court's broad discretion. As determined by the Supreme Court, the applicable standard "turn[s] on the reasonableness of the removal." *Martin*, 546 U.S. at 141 ("Absent unusual circumstances, courts may award attorney's fees under §1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied.") (citing *Hornbuckle*, 385 F.3d, at 541; *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000)).

Furthermore, the Third Circuit has held that attorneys' fees will not be appropriate where a defendant has made a colorable claim for removal or when a notice of removal was filed under "bright line circumstances." *Roxborough Condo Ass'n., Inc. v. Anthony C. Cupo Agency*, 316 F.3d 224 (3d Cir. 2003). Conversely, the Third Circuit has held that, where a removal petition is "frivolous and insubstantial," attorneys' fees will be appropriate on remand. *Mints*, 99 F.2d at 1261. Of particular relevance here, courts in this Circuit have held that "where lack of jurisdiction was plain under law and would have been revealed to counsel for the defendant with a minimum of research," attorneys' fees awarded on remand of a case removed by defendant will be appropriate. *Township of Whitehall v. Allentown Auto Auction,* 966 F.Supp. 385 (E.D. Pa. 1997); *Newton v. Tavani*, 962 F.Supp. 45, 48 (D.N.J. 1997).

Because this Court found no objectively reasonable or colorable claim for JP Morgan's removal of this case, the Court awarded attorneys' fees to the Plaintiff. JP Morgan's Notice of Removal merely accused Plaintiff of fraudulent joinder as to Defendant Ideal but lacked any factual support. *See Mints,* 99 F.2d at 1261. Moreover, a lack of jurisdiction is plain in this case and would have been revealed to JP Morgan with little to no research. Therefore, this Court

found attorneys' fees appropriate on remand.

A court shall reconsider where there is new evidence or in order to correct a manifest error of law or fact. *Harsco*, 779 F.2d at 909. In its Motion for Reconsideration, as far as new evidence, JP Morgan only offers an alleged telephone conversation between JP Morgan's counsel and Plaintiff's counsel concerning diversity jurisdiction. JP Morgan contends that, during the course of this conversation, Plaintiff's counsel admitted that it added Ideal as a Defendant for the purpose of destroying diversity. However, JP Morgan states that this alleged conversation occurred "during the pendency of the prior proceedings." Docket No. 23, at 3. While the Court will not inquire into the merits of this information, the Court will not, for purposes of this motion, consider this new information, as it has not arisen since the remand of this action and thus cannot be considered new evidence warranting consideration.[7] *See* Fed. R. Civ. P. 60(b). *See also Harsco,* 779 F.2d at 909 (citing *DeLong Corp. v. Raymond Intern., Inc.,* 622 F.2d 1135 (1980)). Moreover, the contents of this conversation was hotly contested by Plaintiff's counsel both in writing and at oral argument.

Based on the foregoing, the Court finds no manifest error of law or fact in its original award of attorneys' fees on remand. Applying its discretion under §1447(c), this Court found that attorneys' fees were appropriate because, not only was remand proper, but no objectively reasonable basis for removal existed. Finally, as JP Morgan has offered no new as evidence or asserted a change in law, this Court will not reconsider its initial award of attorneys' fees. Therefore, JP Morgan's Motion to Reconsider is denied.

---

7       JP Morgan attached an affidavit of Daniel S. Bernheim to its Reply to Plaintiff's Second Motion for Attorneys' Fees (Docket No. 27, Exh. A), wherein JP Morgan's Counsel states that the telephone conversation in question occurred on April 25, 2007. *Id.* at ¶13. This case was remanded on June 12, 2007. Prior to the instant Motion dated June 25, 2007, according to Mr. Bernheim's affidavit, JP Morgan had knowledge of this conversation. However, JP Morgan first introduced this information in the instant Motion.

### III. PLAINTIFF'S SECOND MOTION FOR ATTORNEYS' FEES

The Plaintiff argues that because JP Morgan lacks an objectively reasonable basis for the instant Motion for Reconsideration, this Court should enter a second award of attorneys' fees. *See* Docket No. 26, at 2. The Plaintiff further argues that such fees are appropriate "insofar as the additional fees were 'incurred as a result of removal.' " *Id.* at 2 (citing 28 U.S.C. §1447(c)).

Fee awards under §1447(c) are collateral issues over which federal courts maintain jurisdiction after remand. 28 U.S.C. §1447(c); *Mints,* 99 F.3d at 1258. Under §1447(c), the district court may award attorneys' fees for any abuses in the removal process. *See Schrader v. Legg Mason,* 880 F.Supp. at 366 (E.D. Pa. 1995) ("Amended statute authorizing award of costs and attorney fees in conjunction with order remanding case to state court permitted discretionary awards for any abuses in removal process, rather than solely for improvident removal as under previous version of statute . . . "). Furthermore, the reasonableness of attorneys' fees awarded in conjunction with remand are within the discretion of the district court. *Id.* at 371 (citing *Miranti v. Lee,* 3 F.3d 925 (5th Cir. 1993)).

Here, Plaintiff has continued to incur fees and costs associated with removal as a result of JP Morgan's Motion for Reconsideration, which affords no new evidence or a basis for finding that there was a manifest error of law in awarding fees initially in connection with the remand of this case. Furthermore, in its Motion for Reconsideration, JP Morgan merely repeats its arguments, suggesting that Plaintiff had some sort of nefarious motive in bringing this action against both JP Morgan and Ideal by way of declaratory judgment action in order to keep this case in state court. As such, this Court finds that Plaintiff is entitled to a second award of reasonable attorneys' fees for the costs and fees incurred as a result of JP Morgan's Motion for Reconsideration.

In initially reviewing counsel for the Plaintiff's invoice for services, *see* Docket No. 25, Exh. E, this Court found that the amount sought by Plaintiff for continued litigation on this matter should not include costs incurred in researching and drafting unrelated motions, such as a motion for Rule 11 sanctions, which was never subsequently filed. On the contrary, pursuant to the statute, a party may only recover costs and expenses, including attorneys' fees, "incurred as a result of the removal." 28 U.S.C. 1447(c).[8]  In Plaintiff's Response to Order of Court dated August 1, 2007, see Docket No. 33, Plaintiff properly sets forth fees and expenses incurred in preparation for oral argument on Defendant's Motion for Reconsideration and the preparation of and argument on Plaintiff's Second Motion for Attorneys' Fees.

This Court finds that Plaintiff's Counsel has offered a sufficiently detailed accounting of those attorneys' fees and costs incurred as a result of Defendant's requested reconsideration. The Court also finds that it is within its discretion to award such relief. *See Portside Investors, L.P. v. Northern Ins. Co. of New York*, 253 F.Supp.2d 835, 837 (E.D. Pa. 2003) (citing *Mints*, 99 F.3d at 1260 (providing that a district court "has broad discretion and may be flexible in determining whether to require the payment of fees under section 1447(c)")).

Based on the foregoing, Plaintiff's Second Motion for Attorneys' Fees is granted and the Court awards Plaintiff the sum of $8992.00.

## IV. CONCLUSION

Based on the foregoing, the Court finds that remand was proper and that Defendant JP Morgan lacked an objectively reasonable basis for removal and thus, pursuant to §1447(c), the Plaintiff is entitled to costs and expenses, including attorneys' fees.

---

8       Accordingly, on August 1, 2007, the Court ordered counsel for the Plaintiff to submit a more detailed accounting of fees and costs pertaining to remand, *see* Docket No. 29, to which the Plaintiff responded on August 14, 2007. *See* Docket No. 33.

Finally, the Court also takes this opportunity to remind counsel for the parties of the standards of professionalism to which attorneys appearing before this Court are expected to adhere. In particular, this Court directs the parties to its Practices and Procedures, which references the *Code of Trial and Pretrial Conduct*, published by the American College of Trial Lawyers, the *Civil Discovery Standards*, published by the American Bar Association, and the *Guidelines for Professionalism*, published by the Allegheny County Academy of Trial Lawyers. In particular, the *Guidelines for Professionalism* instruct counsel to "treat all other counsel, parties, and witnesses in a civil and courteous manner, not only in Court, but also in all other written and oral communications." *Guidelines for Professionalism*, §3, ¶1 (July 2000). The *Guidelines* further advise counsel to refrain from "offensive conduct" and abstain from "disparaging personal remarks or acrimony" toward opposing counsel. *Id.*, at ¶2. Finally, the *Guidelines* provide that counsel "will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusation." *Id.*, ¶4. In sum, this Court urges the parties to adhere to the adage made famous by Sergeant Joe Friday of *Dragnet* fame –"Just the facts, ma'am"– and the law.

An appropriate Order to follow.

Dated: September 7, 2007.

Nora Barry Fischer
United States District Judge

cc:    All counsel of record

21